at all argument not to exceed 15 minutes per side. Mr. Philip Ellison. You may proceed for the appellant. Thank you. May it please the court. Philip Ellison appearing on behalf of plaintiff. Your honor. I've reserved 3 minutes for rebuttal your honors today. The case before you has three different theories and it's essentially pick your poison going forward as to the issues involving the use of nondisclosure agreements as a means to stifle someone's claim to the plaintiff's claim to the plaintiff's claim to the plaintiff's claim to the plaintiff's claim to the plaintiff's claim to the plaintiff's claim to the plaintiff's claim to the plaintiff's claim to the I'm delaying the speech about what about how and when in what context Michigan State tax assessors applied. The principals that they learn as part of their class to a dispute a public dispute about the implicit, the the main one being today is that we are alleging that the use of a nondisclosure agreement system is a form of prior restraint is this court said in McClone any a prior restraint is any system which forbids certain communications of private citizens before they are to occur. And how does this in the work is a prior constraint. Because it actually like anything. It's no different than a court order a quarter. The court order says you cannot speak doing this. And if you do, there will be punishment. If you speak on the topic that you're not allowed to speak about The same thing is occurring here, which is the though here is a contract as opposed to a court order that says you will not speak. And if you do, there's a punishment that Here was a little bit of my struggle with the briefing is that the the NDA specifically says, you may not show you may not use this training material. Your brief argues, we can't say anything about the concept, but that's not what the NDA says. You could argue anything on the concept, you could come forward and say, you know, they are still cheat the assessors are still wrong. Here's the law that relates to it. You could take what you learned in the course. And explain why that's the law in the state and why the assessments are incorrect. So how is that barring you from addressing an issue as opposed to barring you from using protected documents that train Well, I would point the court to paragraph one of exhibit D in the in the second amended complaint, which I guess I would take An objection on the fact that the language of the actual NDA says it's the content of the course material. And then it goes on to include questions and answers as part of that that you're not allowed to speak about it or and says you can't transmit it in whole and part in oral or written mechanical or electronic form. The way I read Not you cannot reproduce that documentary evidence. Correct. Well, I don't read it that you're reading it more narrowly than I think the plain language provides for in this instance, it says that the content of the course material, not the documents themselves. Now, if the NDA said you're not allowed to retransmit the documents. Now we might have a slightly different case. Oh, so your argument. Is that because these training materials relate to the laws of Michigan and their application in assessment that the NDA is barring you from independently arguing the laws of Michigan that govern assess That would be what the language, the plain language of the NDA agreement provides for because it doesn't say the documents themselves. It says the content of the materials content would be the words concepts and ideas that are placed upon those documents. And so in this instance, when Mr. Frick, or excuse me, when Mr. Osterling was was advocating for the use of these materials that not the materials themselves, but the concepts in the materials themselves as going forward as being a basis to try to argue that the The assessors themselves are improperly applying the law incorrectly. He was using the content, not the document, not necessarily the documents themselves, but it's the content of those materials is what's provided for as being the basis for which Miss Frick proceeded to the to for punishment purposes. So, Was that or was it actual publication? Well, it was the so there's been some, I guess, some back and forth on this, the actual letter from Miss Frick, which is actually attached as exhibit after our second amended complaint at page ID 314. It actually provides that it was the communications, the letters that were written to the local township officials is what Miss Frick found at least and or her staff found inappropriate and improper. The, the, there's been part of the allegations, at least because I attended the informal hearing as counsel for Mr. Osterling, that part of the discussion was also about the posting of these things onto Facebook itself, which included the concepts and materials from the actual. So, so before there was any question about punishing or about examining what your client had done. Are you taking the position that your client had not replicated teaching materials to which the NDA applied? No, I'm no, I was saying that he, he used a portion of the actual document itself going forward as part of his communication, his petitioning activity with township officials. And I guess, So then the question becomes whether we have a contractual NDA. Correct. It bars use of particular documents from training versus your argument that he, that he's being punished for addressing the whole concept. Well, to be perfectly honest, I don't know exactly what he was, he wasn't punished in this respect because of course, part of the defense that we raised was at the, at the hearing was first amendment protections. The informal subcommittee provided no basis or explanation as to how they reached their particular conclusion. The problem is saying that before any activity was undertaken against your client, he replicated portions of the training material. He used, he used portions of the physical documents themselves in electronic picture, if you will, as part of the, as part of his petitioning activity with township officials. Yes. But, and I would point this court, if I may pivot, that would point this court to the Marsetti case, which is the fourth circuit's kind of famous decision about the CIA operative aspects of this. Those two were documents. Those two were information that came from the CIA and the, and the fourth circuit there held to the extent that this was not national security related information. That was in fact, a violation of the first amendment to try to preclude the use or discussion of those particular documents. These documents are not, they're not keys. They're not specialty items. They're not, they're paper and ink. Paper and ink records ideas, concepts, and thoughts, which actually is what the idea here is that of course, when you're petitioning to a township official, you would like to show them the official position of the government as they, as they taught their township assessors, because that would go to show that the local township assessor who was at odds with Mr. Ostergen here was in fact doing this contrary to both the law and how she was taught. But counsel, nothing would have stopped your client from simply paraphrasing, right? I don't, I don't, fair enough. Yes. But the problem here is, is the, the, the issue that we're raising on this is even if he used the documents themselves, the documents themselves do not contain anything on there that would warrant to be covered by an NDA in this respect for purposes of an NDA. I mean, the key here is, I mean, Wait, let's, let's examine that. Yeah. You have a non-disclosure agreement because you've done some work to create documents or training or teaching that you want to protect. You want to protect the fact that you have invested in this training course and you don't want somebody to replicate that language or usage, like you don't want them to replicate a textbook. And that, why isn't that what is being protected? Because that's not what they're claiming. The reason for the NDA was the specific reason that the government, Ms. Frick and the government here said they needed the NDA was to prevent public confusion of the concepts that Mr. Ostergen was advocating for. It wasn't because it was trying to protect the, the interest. Now they may try to make that position here today, but that's contrary to their position. They took below. There is no harm and there's no interest that the government has in suppressing ideas, whether it's recorded in oral form, written form, audio, visual, you know, essentially by putting things on paper, the government is saying you can't talk about or share these documents, even though the concepts themselves are not protected by any sort of government interest that would warrant protection. The government has no copyright here. And I think that's the one thing, if I can leave on this, is that the government and we've actually pledged that, because again, this is at a 12B6 stage that this, the procedure of this case is coming to, we have specifically pledged that the government has no intellectual property rights into these particular documents or the items that are on the documents themselves. So it's our position that you essentially, the government can't use an NDA to block ideas and concepts that are recorded. How do you then address the Yoder case? Yoder, I think is interesting because Yoder was protecting private health information of a private individual, which I think makes it distinguishable here. Yoder was a young student who, and I say young student, a college student, who was trying, who was, who violated, allegedly violated the, you want to say the agreement to hold certain information confidential. That information was private medical data of the individuals that she was observing as part of her nursing studies. HIPAA and federal law and the private aspects of those individuals that are there were the ones which was being parlayed or otherwise put out into the world. Here, the message, the information that is supposedly being protected is Michigan law and how Michigan law is to be applied. There's no interest whatsoever in being, in protecting that information from public discussion and public disclosure. This case moved here to Michigan saying that they're not enforcing that anymore. Well, that's, again, I think we're getting, I know that we're talking about semantics, but semantics are important here. The language here that, and I've attached a copy of the meeting minutes as part of the second amended complaint, it's at page ID 349. The language is, is that we will no longer enforce the current non-disclosure agreement. They did not say that we will not invalidate them. The Michigan, or excuse me, the US Supreme Court in the city of Mesquite case versus Aladdin's Castle said even when an ordinance, for example, is rescinded, that is not good enough grounds in order to moot the case because the government could simply change its mind and take a different path forward. The government here has the burden under the, I think, under the voluntary cessation doctrine to prove that they cannot ever utilize the wrongful actions ever again. Okay, counsel. Thank you. You have Mr. Hodges. Thank you. May I please the court assistant attorney general Matt Hodges appearing on behalf of the defendants, Apple, he's Heather Frick and David Buick and their individual and official capacities respectively. I had a planned out argument here and then, of course, you know, things change. I think they say you have a plan until you get punched in the mouth. So some of that has changed based on the arguments that I just took part in here. I want to start out with a couple of things that I think need to be addressed right out of the gate. Content does not mean concepts. This whole idea that this NDA was meant to preclude speaking about property taxes by an individual taking a course to be potentially in the field of being a tax assessor in the state of Michigan is absurd to me. That's an absolutely absurd argument. I don't mean that to be insulting. That's just a bizarre interpretation of an NDA. It's absolutely about taking the materials as they exist within a course and replicating them. That is what the NDA speaks to, and that's what it's about. Any other interpretation would be absurd. And that's what happened here. I mean, it's admitted that there were verbatim republication of these things. And to say that there was only one potential reason why you might enter into such an NDA, any type of agreement like this, is also somewhat baffling. There's never any situation where there's one single solitary benefit of something like this. And certainly there is a benefit to keeping course materials. Nobody wants to take the current bar exam and disclose the questions. The bar exam doesn't want to do that. Test prep courses don't want to do that. The commission doesn't want to do that. It's a lot of work to prepare these things, and they don't want to re-prepare them every time they have to offer a course. And part of keeping up the integrity of this program is making sure that these things aren't just floating out there. Test questions, and to be clear, this isn't just one examination and then some materials. This is a course. There are weekly assignments. There is a cumulative score going throughout the course. And a cumulative exam at the end of it. So all of this, they consider to be a part of their, I'll say, proprietary. There may not be a copyright here, but I'm not aware of any situation where you can't have an NDA if you don't have a copyright. I just, I'm not a copyright attorney, so I'm not going to go too far on that. And I'll just say, the language in the NDA that talks about content is very distinct, as Judge Strange pointed out, is different from concepts. It doesn't say concepts from, it says the content of. So with that, I'll, and I will say, it is not the official position. I think that was part of the argument that these materials are being held out as the official position. That's the confusion point here. These are prepared for a particular course to try to put together hypotheticals and problems, but they're not letter rulings. They're not promulgated rules. They're not statutes. They're not part of the constitution of the state of Michigan. These are offered within a course for the purpose of trying to put people through a rigorous, lifelike situation, but they don't carry over into the real world as some sort of binding precedent. And that is one of the concerns here. So I'll say, I think there are three reasons why the lower court's decision should be affirmed, because it was well-reasoned and correct. The court correctly held this is not properly described as a prior restraint. If anything, it would be a potential subsequent punishment scenario. Here, there was none. We're not talking about a court order, a law, or an injunction. We're not talking about seeking approval in advance of some sort of communication. We're talking about the potential. And here, we had an informal review and no action taken, but the potential for some subsequent action. And again, I'll point out, that would only be for people who were licensed by the state of Michigan. If you took the course and failed, I don't know what in that agreement would have any binding effect or impact on your life. If you took that course and passed and 10 years later let it lapse, I'm not sure what impact that would have on your life. And I'm not sure what impact it had on speech, period, that changed from the day before he signed up for the course. He didn't have those materials to reproduce until the day after. He could have spoke on these concepts and topics at any time. It was only by virtue of taking the course that he had access to them. I think second, the court was correct in dismissing the Fourth Amendment claims because they were promised on the same prior restraint claims. And once the court sort of analyzed and dismissed that, it was proper to dismiss those claims as well. Your opposing counsel also argues that it was an unconstitutional condition. Why is that not correct? You know, I think this court's, I'm a little dense perhaps, this court's order for supplemental briefing didn't necessarily strike with me. I really tried to make the concepts meld and I can see where there's overlap. But I think it hit me in preparing for this argument maybe a little bit better than when I was preparing the brief. Unconstitutional conditions tend to relate to a government benefit that is conditioned on limiting one's speech in a way that the government could not do but for that exchange. And this court had asked us to look at the government spending line of cases. And I think that as we briefed, when that spending is attached to a requirement that's related to that program or that specific thing that's being handed over, in those cases money, but here coursework, course materials, examination materials, the government has a right to place reasonable limitations on those things handed over. It gets in trouble when it reaches outside of those parameters of the things related to that. If they had said you can't speak up about the commission, you can't bad mouth us, disparage, none of that happens here. In that regard, it's not content based at all. So I think that's what distinguishes this from an unconstitutional condition in that it's specifically related, other than the argument I heard a few minutes ago, to these exact materials. I don't know if that answers your question, but that's my take on the unconstitutional condition claim. I would also like to say the lower courts working through these fairly novel claims, it was an excellent job trying to fit this into the case law that we have available. There's really not much on point factually that you're going to find like this, other than Yoder, and I'll admit those claims were somewhat different, but factually it was strikingly similar, I'll say. In the Yoder case, as you know, there was a student enrolled in a program, signed an agreement that said that they would limit their own speech, and that limitation was related to things that they would learn and see and witness as a part of their enrollment in that course. I would go back and push back on the claim that this was HIPAA, that Yoder turned on HIPAA. That's not how I read that case. In fact, that's what we briefed in the lower court. Yoder talked about things observed about, it didn't even identify people, so it's not clear that if it was a HIPAA violation, there would have been some much bigger problems for the student, I would assert, than just violating the university policy. So I would say Yoder was even much more broad, broader, broader, broader than the current provision that we're talking about, and that was upheld under a First Amendment scrutiny. So I know that the claims were somewhat different, but I think the lower court was correct in analogizing and pulling some of the concepts from that case, because here we have a student, but for the enrollment, would not have had access to this information, agreed to limit the use of that information in particular ways, and violated it. But unlike Yoder, we didn't have an enforcement, we didn't have any action taken against him. And since then, the policy is no longer in place, although I think this maybe is the best place to push back on that as well. It's not just semantic. I mean, I don't think you have to be redundant in saying that you have a contract, you have decided that you are not going to enforce it, and you've published that to the people who are the other signatories to that contract. Unlike a local ordinance, which I'll admit that you go back and reenact to the local government at a later time, I don't know how you unilaterally, retroactively revive a contract that's been disavowed, that's been, we're not going to enforce it. I mean, I would discourage a client from trying to do something like that, barring some unseen circumstance that I'm not thinking of here. But you could introduce it again for new contract, for new material. I think that there certainly could be a future commission, and that's the other piece of this that's, you know, I won't say a wild card, that's not correct. But a little bit of a variable is this is a commission appointed on staggered terms by whatever governor is in office when there is a vacancy. And this commission that was at issue in this case was completely different from the one that enacted and put this in place. And it's not the commission that's seated right now. Two out of the three are the same, but one is different. So they certainly could revisit this issue. They could reenact for classes going forward. The current, I should say, the prior, the current for the purposes of this case, had decided they weren't going to use these, and they haven't been. Beyond that, I don't know. Oh, I would say having to pull from Yoder, which is not ideal, but that is the closest, I think, in terms of guidance we have on an issue like this just shows us that there's not clear guidance on this particular kind of problem. And for that reason, there was no, my client certainly had no reason to know, no clear guidance to say that she was violating a right. She's entitled to qualified immunity. I would finish also by saying, going back to the comment about this no longer being in place, it is moved. Ex parte young relief is not appropriate because there is no current class or individual impacted by one of these agreements. It's not in place. It's not even, it would be purely hypothetical, which I'll admit certainly could happen in the future, but there's not a likelihood at this point. With that, unless the court has any questions, I would rely on my brief and hand over the rest of my time. Thank you. Any questions? Ellis. Yes, thank you. A couple of small points, just to make sure the record is clear. Mr. Ostergen is part of his advocacy about the taxing situation in garish township. He did not publish any questions and did not publish any exam. Parts of the exam did not publish any parts of the, any answers to the exam. It's the materials themselves, the concepts that were in the actual documents that were actually the ones that were published to this. What I have not heard from the government today is an explanation as to why they would need this NDA to begin with. Why would you need someone to be precluded from being able to speak about what's being taught to the public officials who become public officials in the application and implementation of our taxing laws in the state of Michigan? I mean, what we essentially heard today would be is if this court for, as a weird analogy, would be as if this court said, you're not allowed to discuss publicly the contents of the briefs that you submit to this court as a condition of coming to this court to have public services rendered in the form of a decision. And when I hear my brother counsel say is, well, you can talk about, you can, you can, you can trash the judges. You can trash the court. You can trash the underlying aspect of it. I'm struggling with that. You know, this is, that's an open court issue. The real question is, did your client enter a contract? Well, the problem is say, I want to take this course. And they said, OK, here's how much it costs. And by the way, since we've created these documents, you can't make them public. It's an NDA. And you signed off. I mean, that's what I'm struggling with. Why is it not just just a simple contractual arrangement that could have easily been avoided by using all the ideas and concepts and everything that he learned from the course and even saying he learned things from the course and discuss it publicly without actually replicating what he had agreed by contract not to replicate. Two points in response. One is the government can't create secret documents in this respect. That's the whole point. We can't create, you know, that's part of the openness and transparency of government that is required under the First Amendment that these documents outside of the national security context is a First Amendment violation. You can't use a contract law to in the place of a rule. Now, I would admit this case would be a lot easier to me if this was a rule or a statute in some way, as opposed to a contract. Governments can't enter into contracts to to force people to give up their right to share these public documents created at public expense. And what I'm hearing is, is that we want to create through contract law the ability for government to create secrecy. That's never that has been that is that is an anathema of the First Amendment. And I would argue that this court should not be the first in the country to be the one to create that sort of system, because the the U.S. Supreme Court has explained any system of prior restraint. Contract law or otherwise is precluded under the prior restraint doctrine. Thank you. Thank you, counsel. Thank you to both of you. The case will be submitted. Thank you.